UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Patricia H., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 17 CV 50264 |
| | ) Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, who is now 66 years old, filed her disability applications in 2013, alleging that she was disabled based on foot, hip, and shoulder pain, among other problems, caused by a variety of impairments.[2] In the summer of 2016, a few months before the administrative hearing, plaintiff submitted medical opinions from six treating physicians—Dr. Ansari-Ali, Dr. Shah, Dr. Chang, Dr. Mayer, Dr. Berry, and Dr. Sterba. *See* Exs. 20F-26F. These doctors completed forms asking about plaintiff's abilities to stand, sit, and walk in the workplace and other related questions.[3] Also in the record were two State agency opinions, one from 2013 and one from 2014, as well as several opinions from Dr. Rivera provided in 2013.

The ALJ found that plaintiff could do sedentary work subject to certain restrictions. A key part of the decision, and the focus of this appeal, is the ALJ's analysis of the medical

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.
[2] Specifically, the ALJ found these impairments were severe: "a history of coronary artery disease with single vessel coronary artery bypass grafting, a history of a right humeral fracture, a history of a rotator cuff repair in 1993, avascular necrosis of the right hip, chronic obstructive pulmonary disease (COPD), degenerative changes in the cervical and lumbar spine, sleep apnea, complex regional pain syndrome of the upper extremities, tobacco dependence, osteoarthritis of multiple joints, and obesity." R. 23
[3] The forms each doctor completed were similar, although some were geared to the doctor's specialty. Dr. Ansari-Ali, for example, completed two forms, one on arthritis and one on complex regional pain syndrome.

opinions. The ALJ rejected the opinions from five of the six treating physicians (all except Dr. Sterba). Plaintiff argues the ALJ failed to explicitly apply the treating physician rule but instead provided an "amalgamated analysis" that was a "jumbled, messy mix of the two steps." Dkt. #22 at 2. Plaintiff also argues that the ALJ failed to evaluate *each* opinion individually under the checklist and instead addressed them altogether in "just one sentence." *Id.* Plaintiff argues that an expert should be called on remand to adjudicate among these competing opinions.

The Government's response brief is—at its core—a rehabilitation project. Recognizing that the ALJ's analysis as written is conclusory with gaps and ambiguities, the Government provides a more systematic analysis. Even plaintiff concedes that, if the ALJ had made these arguments in the first instance, then "this case might be very different." Dkt. #22 at 6. The Court agrees. The Court also wishes that the ALJ decisions were written with the type of thought and thoroughness reflective of the Government's brief. All too often, the brief is better than the decision it seeks to support. But this practice is futile. As plaintiff correctly notes the Government's arguments violate the *Chenery* doctrine by offering arguments not relied on by the ALJ. The best way to approach these arguments is to first consider the ALJ's analysis on its own and then afterwards compare it to the Government's new and improved version.

The ALJ's analysis can be divided into four parts. In part one, the ALJ discussed the two State agency opinions, giving them only "reduced weight" because they were rendered before "[n]ew probative evidence" emerged. R. 30. The ALJ did not explain precisely what the new evidence was (other than a vague reference to reflex sympathetic dystrophy), or why it was probative, nor did the ALJ discuss any details from these two opinions. Based on this discussion, one would expect that these opinions dropped out of the analysis, but, like Lazarus, it turns out that they were resuscitated for a cameo appearance in part three.

In part two, the ALJ addressed Dr. Rivera's opinions, which consisted of a medical form and two short letters. The form was submitted in July 2013 as part of plaintiff's Medicaid application. The ALJ found that the findings on this form were "generally consistent" with the ALJ's RFC of sedentary work. The ALJ gave no reasons for this conclusion. The ALJ next considered two letters, one dated August 7, 2013 and the other dated October 25, 2013. The August letter contained only the following sentence: "My patient [] has been physically able to work both before and after July 21, 2013." R. 478. The October letter contained only the following sentence: "Patient [] is restricted from work due to impairment and pain caused by multilevel cervical and lumbar degenerative disk/joint disease and right hip avascular necrosis." R. 414. The latter statement obviously strongly supported plaintiff's claim. However, the ALJ rejected it because it was "contradict[ed]" by the July form and the August letter. No further explanation was provided.

In the third part, the ALJ rejected the five treating physician opinions based on the following "group" analysis:

> These opinions all indicate to some degree that the claimant is incapable of sustaining even the exertional demands of sedentary work on a full time consistent basis. These opinions are inconsistent with the opinions of the state agency medical consultants, and the extreme sitting, standing, and walking limitations are not supported by the medical evidence of record as outlined above and further, which document normal strength, reflex, and tone. I accord some weight to the opinions that the claimant is limited to standing and/or walking for no more than two hours during an eight hour day (the limitation of sedentary work), and I have credited the need for a sit/stand option, but even with these significant restrictions the vocational expert testified that the claimant's past work is not eliminated.

R. 30. Following this paragraph, the ALJ included a series of short paragraphs summarizing certain examination findings from certain doctor visits. These paragraphs are merely descriptive, with no accompanying analysis. They appear to have been offered as evidentiary support for the previously-stated rationale that plaintiff had normal examination findings.

3

In the fourth and final part, the ALJ discussed Dr. Sterba's opinion—the only one of the six from 2016 that the ALJ found credible. The ALJ gave it "some weight." The ALJ declared that it was "consistent" with the RFC finding, but the ALJ did not explain why. The ALJ did respond (at least superficially) to a criticism plaintiff's counsel had raised at the hearing. Counsel argued that Dr. Mayer's opinion deserved greater weight than Dr. Sterba's opinion because Dr. Mayer treated plaintiff's multiple impairments in combination. In contrast, Dr. Sterba only treated the hip. The ALJ rejected this argument, stating only that "the overall record does not support the level of limitation reported [by Dr. Mayer], for the reasons discussed above."

After reviewing this analysis—and without yet considering the Government's attempts to bolster that analysis—the Court finds that it is inadequate. First, as noted above, it is conclusory at key points. For example, the ALJ rejected the two agency opinions because new and probative evidence emerged. But the ALJ never identified this evidence and why was it probative. These facts could be useful in assessing the six treating physician opinions that were issued three years later. Turning to Dr. Rivera's opinions, which by the way were rendered in 2013, the ALJ chose to accept some and reject others. Again, the ALJ never provided a rationale. Given that all three opinions were given *by the same doctor*, there should be some explanation for the abrupt about-face Dr. Rivera seems to have made between the July 2013 form and the October 2013 letter. Rather than picking among these opinions, the ALJ should have considered whether it would have been more fair to simply reject them all as being irreconcilable with each other. As for Dr. Sterba's opinion, the ALJ gave it "some weight," but once again did not explain why. The ALJ also provided no explanation for why she rejected counsel's argument that Dr. Mayer's opinion

4

deserved more weight given that Dr. Sterba only opined about plaintiff's hip problem.[4] These questions are important and should be answered on remand.

Second, the ALJ did not apply the checklist and thus failed to consider the specific role and experience of each doctor. The checklist specifically asks about the length and nature of the treatment relationship, as well as the doctor's specialty. The ALJ did not consider these issues. Instead, the ALJ lumped all five physicians together in a cursory analysis; in contrast, the ALJ devoted at least a full paragraph to the doctors' opinion supporting her decision. As this Court has noted, it is important that the ALJ employ the "same metrics" and the "same level of rigor" in evaluating multiple opinions. *Vandiver v. Colvin*, 2015 WL 8013554, *3 (N.D. Ill. Dec. 7, 2015) ("the checklist has its greatest usefulness as a tool for making an apples-to-apples comparison between opinions.").

Third, turning to the two rationales given in part three for rejecting the treating opinions, the Court finds that they each are problematic. The first rationale—that the five treating opinions were inconsistent with the two non-examining opinions—is itself internally inconsistent. As noted above, in part one, the ALJ rejected the agency opinions because they were incomplete, but then relied on them to summarily dismiss the opinions of treating physicians. The ALJ's second rationale—that the record contained normal examination findings—is also flawed. As plaintiff notes, the ALJ did not call a medical expert at the hearing and, therefore, had to rely on her layperson intuitions to assess the significance of the medical findings. But as the Seventh Circuit and this Court have noted, medical expertise is typically needed to make assessments about what is "normal" or "significant" for each particular ailment. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the

---

[4] At the hearing, counsel also suggested that Dr. Mayer had the longest treatment relationship with plaintiff. R. 48.

significance of particular medical findings themselves."); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (ALJs must "rely on expert opinions instead of determining the significance of particular medical findings themselves"). To cite one example, one of plaintiff's impairments was complex regional pain syndrome. This condition was treated by Dr. Ansari-Ali, a rheumatologist.[5] The ALJ seemed to believe that various normal examination findings (the main one being a normal gait) were inconsistent with this condition being disabling. But this is an assumption that should be confirmed by a medical opinion. This is another reason why a medical expert is needed on remand.

      Having considered the ALJ's analysis on its own, the Court now considers the Government's arguments, which attempt to shore up, amplify, add to, and ultimately improve upon the ALJ's analysis. The Government offers a bolder reading of the evidence, turning up the persuasion knob up to 11 by adding more detail and arguments to the ALJ's conclusory discussion.

      The Government begins with a big picture perspective. It describes the landscape of medical opinions as being evenly divided, akin to a closely divided court with a 5-to-4 split. Specifically, although five physicians supported plaintiff's claim, four others (Dr. Sterba, Dr. Rivera, and the two agency physicians) supported the ALJ's reasoning. According to the Government, the ALJ found that Dr. Sterba's opinion was the "most persuasive" of the group. Dkt. #19 at 6. The implication suggested is that the ALJ had to break the virtual tie and choose between two reasonably-supported interpretations. The Government believes that a remand to obtain expert testimony would not resolve this basic impasse because it would only "add a tenth opinion to an already crowded field." *Id.* at 13.

---

[5] Plaintiff notes that Dr. Ansari-Ali "performed physical examinations, muscle strength testing, tender point analysis, ordered blood work, and reviewed medical imaging." Dkt. #22 at 5.

As for the five treating physician opinions, the Government in its brief does what the ALJ did not do in her decision. The Government addresses each doctor's opinion individually in a separate section and provides specific criticisms of each. This discussion covers six pages and stands in contrast to the ALJ's cursory discussion. In general, the Government goes into greater detail about the "generally normal findings" made by some of these physicians. Dkt. #19 at 8. The Government also discusses in greater detail arguments that were only alluded to by the ALJ, or were not mentioned at all. For example, with regard to Dr. Shah's opinion, the Government notes that his opinion was described as "short term disability paperwork" and then speculates that this label (*i.e.* "short term") raises a question about whether he believed that plaintiff's impairments "were expected to last." *Id.* at 10. As for Dr. Chang's opinion, the Government argues that he "declin[ed] to complete substantial portions of the form" and argues that it was unclear whether his opinions were specific enough to help plaintiff. *Id.* As for Dr. Berry, the Government argues that his treatment of plaintiff was too short to be accorded the deference normally given to treating physicians' opinions. *Id.* at 12.

This Court need not consider these arguments in great detail because, as plaintiff argues, several of them were never mentioned by the ALJ. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("the *Chenery* doctrine [] forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced"). Moreover, despite the Government's attempt to add structure and detail to the ALJ's analysis, the Court finds that it is not enough to prevent a remand under the harmless error doctrine.[6] The Government's arguments still rely on "doctor playing," particularly in asserting why normal findings were dispositive. The

---

[6] Although not explicitly labelled as such, the Government's argument is essentially a harmless error argument. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (the harmless error doctrine applies when the court can conclude with "great confidence" that the ALJ would reach the same conclusion absent the error).

Government also did not address the gaps and anomalies identified above. Most notably, the Government continues to count the two agency opinions as being unequivocally supportive of the ALJ's conclusion. But the Government has not explained how this view squares with the ALJ's finding that these doctors were not able to consider the new and probative evidence. The Government's brief also rests on the contention that the ALJ found that Dr. Sterba's opinion stood out from all the rest as being "the most persuasive." But it is not clear that the ALJ agreed with this assessment because she only gave his opinion "some weight" rather than "great weight." And further, neither the Government nor the ALJ has squarely confronted the argument that Dr. Sterba only addressed one of plaintiff's many impairments.

The Court is not persuaded by the Government's claim that calling an expert on remand would be futile given that there are already nine opinions and one more would not materially tip the balance. This argument overlooks the fact that most of these opinions were rendered in isolation, meaning that these doctors did not consider or comment upon the other opinions. In contrast, a testifying expert would have the advantage of being able to consider all of them together in a holistic way and perhaps could reconcile them in some way. It may be that there is no easy way to synthesize them, but an effort should be made before plaintiff's claim is denied.

Because the above arguments are sufficient for a remand, the Court will not engage in a lengthy analysis of plaintiff's other major argument. Plaintiff argues that the ALJ erred in not finding that her anxiety and depression were severe impairments at Step Two. The ALJ noted, among other things, that an October 2015 screening indicated that plaintiff only had "mild" depression, that she was not currently in therapy (although she had been in the past), and that she had "no problems getting along with family, friends, and neighbors." R. 25. Plaintiff argues that this analysis ignored the waxing and waning of her symptoms and that she "had undergone 15

years of consistent, continuous counseling for her depression, but stopped when her insurance lapsed." Dkt. #12 at 8. Plaintiff argues that these symptoms were "critical" for the later RFC analysis because they would have limited her to only occasional contact with the public, which would have prevented her from doing her past relevant work, which in turn would have meant that she was disabled under the grid rules. *Id.* at 9. Given that this case is being remanded, plaintiff may raise these arguments again, although she will have to overcome a contrary line of evidence, some of which is laid out in the Government's brief. Moreover, the Court notes that, with regard to plaintiff's key assertion that she could not work with the public, she testified at the hearing that she "like[s] people" and would be "okay" working with the public. R. 80.

On remand, both the ALJ and plaintiff should re-visit these issues and any others not fully addressed here. Counsel should specifically raise these issues with the ALJ in both a pre-hearing brief and during the hearing itself. Also, the ALJ should call a medical expert and should explicitly apply the treating physician rule to the relevant medical opinions.

For the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is remanded for further proceedings.

Date:  March 8, 2019  By:  _____
Iain D. Johnston
United States Magistrate Judge